UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRITTANY N. JONES a/k/a BRITTANY N. FINCH,

    Plaintiff,

v.

CATTARAUGUS-LITTLE VALLEY CENTRAL SCHOOL DISTRICT,

    Defendant.

**DECISION AND ORDER**

19-CV-707S

## I.  INTRODUCTION

In this action, Plaintiff Brittany Jones seeks damages from her former school district for the harms she suffered when a teacher had a sexual relationship with her when she was fifteen and sixteen years old. Before this Court is Defendant Cattaraugus-Little Valley Central School District's motion for summary judgment, which Plaintiff opposes. (Docket No. 39.) Also before this Court are Plaintiff's motions for discovery sanctions and for a hearing on her motion for sanctions. (Docket Nos. 68, 76.) The District opposes these motions. For the reasons set forth below, Defendant's motion is granted, and Plaintiff's motions are denied.

## II.  BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of the motion for summary judgment. This Court takes the facts in the light most favorable to Plaintiff, the non-moving party. See Mitchell v. City of New York, 841 F.3d 72, 75 (2d Cir. 2016) (at summary judgment, a court "views the evidentiary record in the light most favorable to ... the non-moving party").

1

Plaintiff Brittany Jones was a student in the District between 2009 and 2011. (Docket No. 39-15, ¶ 12.) Timothy Retchless was a teacher in the District from 2000 until his resignation in 2011. (Id., ¶¶ 13, 20.)

The District asserts that it learned that Retchless was engaged in an inappropriate relationship with Plaintiff in 2011. (Id., ¶ 17.) Plaintiff contends that the District was aware by 2009 that Retchless was engaged in an inappropriate relationship with her. (Docket No. 65, ¶ 17.) On February 7, 2011, the District put Retchless on administrative leave pending an investigation. (Docket No. 39-15, ¶ 19.) Retchless resigned no later than February 28, 2011. (Id., ¶ 20.)

Plaintiff, now a resident of Pennsylvania, commenced this action in New York State Supreme Court, Cattaraugus County, on April 9, 2019. Plaintiff alleged that the District was liable for endangering the welfare of a child, violations of New York State education law, negligent infliction of emotional distress, negligence, negligent supervision, and negligent hiring and retention. (Docket No. 1-1 at pp. 8-18.) The District removed the action to this Court on May 31, 2019, pursuant to this Court's diversity jurisdiction. (Docket No. 1.) The District filed its answer on the same day, including among its affirmative defenses that Plaintiff's action was barred by the applicable statute of limitations. (Docket No. 2 at p. 7.)

The late Honorable Hugh B. Scott, United States Magistrate Judge, to whom this case was referred, issued a case management order on July 28, 2019. (Docket No. 6.) The parties moved jointly on April 20, 2020, to extend time for discovery due to delays caused by the COVID-19 pandemic. (Docket No. 11.) On October 9, 2020, the District moved to extend the discovery deadlines due to Plaintiff's failure to timely provide medical

provider authorizations. (Docket No. 21.) Plaintiff opposed this motion. (Docket No. 24.) The District then moved to compel Plaintiff to provide the medical authorizations. (Docket No. 29.) Plaintiff opposed this demand, arguing that she had already substantially complied with the District's demands. (Docket No. 31.) On December 23, 2020, the District indicated that Plaintiff had complied with its requests, and asked for a further extension of the scheduling order. (Docket No. 33.) Judge Scott issued a second amended scheduling order on December 30, 2021. (Docket No. 34.)

On June 29, 2021, the District moved, with the consent of Plaintiff, for a further extension of discovery deadlines to allow the parties to complete their depositions and to find out the result of a related insurance action. (Docket No. 36.) According to the District, Plaintiff's refusal to sign authorizations for her medical and tax records had contributed to the delay. (Docket No. 36-1 at p. 3.)

On June 30, 2021, the Honorable Leslie G. Foschio, United States Magistrate Judge, to whom this matter was reassigned, granted the District's motion and issued a third amended Scheduling Order. (Docket Nos. 37, 38.) Pursuant to that order, the fact discovery deadline was October 5, 2021, and dispositive motions were due on May 27, 2022. (Docket No. 38.) On September 3, 2021, the District moved for summary judgment. (Docket No. 39.) Plaintiff sought and received two extensions of time to file her response.

The parties continued to engage in discovery motion practice after the District filed its motion for summary judgment. On October 5, 2021, the District moved to compel the production of Plaintiff's income and employment records and the enforcement of a subpoena compelling Retchless to testify. (Docket No. 43.) Plaintiff responded that the delays were due to paperwork issues such as the Social Security Administration's refusal

3

to accept a handwritten correction on a form and the District's providing her with the incorrect version of an IRS form. (Docket No. 47.) Plaintiff did not object to the enforcement of a subpoena compelling Retchless to testify. (Id.)

On January 12, 2022, Judge Foschio granted the District's motion to compel and issued a Fourth Amended Scheduling Order. (Docket No. 60.) Judge Foschio ordered Plaintiff's counsel to advise Plaintiff that her failure to comply with the court's order might jeopardize Plaintiff's ability to support her damage claims. Judge Foschio also ordered Plaintiff to show cause why he should not award the District its expenses, including reasonable attorney's fees. (Id.) In response, Plaintiff detailed her production of the discovery the District had requested. She also argued that, by engaging in substantial discovery practice and not filing a motion for summary judgment until just after the close of the filing period opened by New York's Child Victims Act, the District had acted in bad faith. (Docket No. 61 at p. 4.)

The District responded by leave of Court and addressed Plaintiff's accusations of bad faith. (Docket No. 64.) The District argued that it timely raised its statute of limitations defense in its answer filed on May 31, 2019, and that it was under no obligation to act against its own interests and alert Plaintiff to her error. (Id. at p. 3.)

On February 25, 2022, Plaintiff responded to the District's motion for summary judgment (Docket No. 66) and moved for sanctions against the District for its failure to provide certain disciplinary letters as part of its Rule 26 initial disclosures. (Docket No. 68.) On March 22, 2022, Plaintiff filed a motion for a hearing on her motion for sanctions. (Docket No. 76.)

4

### III.  DISCUSSION

The District argues that Plaintiff's claims are untimely because her complaint was not filed within the window of time set by the New York legislature for claims revived by the Child Victims Act. It also argues that Plaintiff fails to state a cause of action under New York Penal Law § 260.10 or under article 23-B of New York Education Law, that her claim for negligent infliction of emotional distress is duplicative of her negligence claim, and that Plaintiff cannot prove her negligent hiring claim.

**A.     Timeliness of Filing under New York's Child Victims Act**

The District first argues that Plaintiff's action, commenced in New York State Court on April 29, 2019, should be dismissed because Plaintiff filed it before the opening of the window created by New York's Child Victims Act ("CVA"). The District argues that dismissal should be with prejudice, because that window is now closed. Plaintiff concedes that she commenced her action prematurely, but argues that this Court should find that the District is equitably estopped from asserting this defense, excuse her mistake, and find that the District would suffer no prejudice if her claim were permitted to proceed despite its premature filing.

**1. Applicable Law**

Under the New York law applicable to Plaintiff's claims, a plaintiff has one year and ninety days to commence a negligence action against a school district. Gen. Mun. Law § 50-i (1)(c). Pursuant to New York's infancy toll, this requirement is tolled for plaintiffs whose claims accrue when they are under the age of 18. N.Y. C.P.L.R. § 208 (a) (McKinney). Thus, a negligence action that accrued when a plaintiff was under eighteen must be brought within one year and 90 days after the plaintiff's eighteenth birthday.

5

In 2019, the New York legislature passed the CVA. This act aimed to correct a "perceived injustice, *i.e.*, that the statute of limitations for certain claims expired before child victims of sexual abuse recovered from past traumas to a degree sufficient to assert their rights." PC-41 Doe v. Poly Prep Country Day Sch., No. 20-CV-3628-DG-SJB, 2021 WL 791834, at *1 (E.D.N.Y. Mar. 1, 2021) (quoting Giuffre v. Dershowitz, No. 19-CV-3377, 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020)). The CVA changed the statutes of limitations and notice-of-claim requirements for child sex abuse claims in several ways. First, the CVA created C.P.L.R. 214-g, which "reopened the state's statute of limitations to allow abuse victims additional time to assert claims that were otherwise barred by the passage of time." Diocese of Buffalo v. Doe (In re Diocese of Buffalo), 618 B.R. 400, 403 (Bankr. W.D.N.Y. 2020). C.P.L.R. 214-g afforded child sexual abuse victims whose claims were time-barred a one-year window in which to bring those claims.

Separately from the claim-revival provision, the CVA also removed the requirement that child sexual abuse claims against municipalities be brought within one year and 90 days. N.Y. Gen. Mun. L. 50-i (5). Another part of the CVA, newly-created C.P.L.R. 208 (b), extended the infancy tolling of the statute of limitations for certain child sex abuse crimes from age 18 to age 55. N.Y. C.P.L.R. 208 (b).

Although the CVA was passed on February 14, 2019, it did not provide for newly-revived claims to be filed as of that date. Rather, the statute provided that claims revived pursuant to 214-g could be commenced *not earlier than six months after*, and not later than one year and six months after, the effective date of that section. N.Y. C.P.L.R. 214-g; 2019 N.Y. Sess. Laws c. 11, § 3. In other words, potential plaintiffs were required to commence their actions between August 14, 2019 (six months from the effective date)

and August 14, 2020 (one year and six months from effective date.) Because of the disruptions caused by the COVID-19 pandemic, the legislature later extended the revival period of 214-g by one year, to August 14, 2021. 2020 N.Y. Sess. Laws c. 130, § 1.

The practice commentary to this statute states that the purpose of the six-month waiting period between the effective date of the statute and the date plaintiffs could commence actions "was to give victims and their attorneys an opportunity to begin preparing their cases before the clock started ticking on the one-year revival period, and … to enable the court system to meet the special issues that the ensuing litigation was likely to generate." Vincent C. Alexander, Practice Commentaries, McKinney's Cons. Laws of New York Annotated, C.P.L.R. 214-g, 2019.

### 2. Plaintiffs' claims.

Plaintiff asserts that she had a sexual relationship with Retchless up to 2011. The District agrees that Retchless retired in February 2011. Pursuant to New York's infancy toll, Plaintiff had until one year and 90 days after her eighteenth birthday to file a notice of claim. Although Plaintiff's birthdate is not in the record, the parties agree that she turned 18 sometime in 2012. Plaintiff's claim thus became time-barred sometime in 2014. The parties agree that Plaintiff's claim was then revived by the CVA. Plaintiff commenced her action on April 29, 2019, almost four months before the date newly-revived cases could be commenced. Plaintiff does not dispute that she filed prematurely. Rather, she argues that a combination of factors—the principle of equitable estoppel, her counsel's errors, a lack of prejudice to the District, and the interests of justice—should convince this Court to set aside the timeframe established by the New York legislature and permit her claim to proceed, despite its filing outside the statutory window. (Docket No. 66.)

As an initial matter, this Court observes that the claim-revival provision of the Child Victims Act is an extraordinary use of the legislature's power. "Special laws," such as § 214–g, "that revive causes of action are 'extreme example[s] of legislative power' and are narrowly construed." S. H. v. Diocese of Brooklyn, No. 2020-07387, 2022 WL 1414607, at *4 (N.Y. App. Div. May 4, 2022) (quoting In re Agent Orange Prod. Liab. Litig., 597 F. Supp. 740, 815 (E.D.N.Y. 1984), aff'd 818 F.2d 145 (2d Cir. 1987) (quoting Hopkins v. Lincoln Tr. Co., 233 N.Y. 213, 215, 135 N.E. 267, 267 (1922)). C.P.L.R. 214–g, which opened the one-year filing window, is clearly a revival statute. Id. (citing Matter of Regina Metro. Co., LLC v. N.Y. State Div. of Hous. & Cmty. Renewal, 35 N.Y.3d 332, 371–372, 130 N.Y.S.3d 759, 154 N.E.3d 972)). This Court must, therefore, construe it narrowly.

Although the presumptive purposes of the six-month waiting period—giving plaintiffs time to prepare their cases and giving courts time to prepare to handle such actions—are not implicated by Plaintiff's early filing, regardless, this Court bears in mind the statute's clear statement of the terms of revival and its own obligation to construe the CVA narrowly.

### a. Equitable Estoppel.

Plaintiff first argues that equitable estoppel applies to her premature claims because of the District's misconduct. According to Plaintiff, the District improperly failed to include, with its initial disclosures, three disciplinary letters to Retchless from 2009 that would have helped Plaintiff's claim. Plaintiff also argues that the District's counsel was "deceptive" when, in 2021, he informed Plaintiff's counsel that "he did not believe that he was going to file a motion for summary judgment." (Docket No. 66 at p. 11.) Plaintiff argues that these factors warrant estopping the District from asserting its statute of

8

limitations defense.

Equitable estoppel is an "extraordinary remedy." Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429, 442 (S.D.N.Y.), aff'd, 579 F. App'x 7 (2d Cir. 2014) (quoting Pulver v. Dougherty, 58 A.D.3d 978, 871 N.Y.S.2d 495, 496 (2009) (Slip Op.)). Under New York law, the doctrine should be "invoked sparingly and only under exceptional circumstances." Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006) (quoting Matter of Gross v. New York City Health & Hosps. Corp., 122 A.D.2d 793, 505 N.Y.S.2d 678, 679 (1986)).

The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense. Zumpano v. Quinn, 849 N.E.2d 926, 929 (2006). The doctrine is applied when a plaintiff is "induced by fraud, misrepresentations or deception to refrain from filing a timely action." Id. (quoting Simcuski v. Saeli, 377 N.E.2d 713, 716 (1978) (internal quotation marks omitted)). "Moreover, the plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations." Id. Absent affirmative misconduct on the part of the defendant, "the plaintiff must demonstrate a fiduciary relationship ... which gave the defendant an obligation to inform him or her of facts underlying the claim." Id. at 930.

As an initial matter, the facts here do not reflect a traditional estoppel pattern in which a defendant's misconduct prevents a plaintiff from timely commencing its action. Here, Plaintiff did not file too late, but rather too early, and she does not allege that the District induced her to do so. Plaintiff's theory, rather, is that the District's discovery conduct and its failure to alert her to the untimeliness issue in time for her to recommence her action unfairly prolonged the action past the closing of the statutory period.

9

Plaintiff's estoppel arguments are unpersuasive. First, this Court does not discern any affirmative wrongdoing on the District's part. Contrary to Plaintiff's arguments, the District did not "hide" the existence of a statute-of-limitations defense. Rather, the District raised its statute-of-limitations defense in its answer. (See Docket No. 2, ¶ 71.)

Further, as is discussed at greater length below, this Court does not find wrongdoing in the District's not disclosing the letters in its Rule 26 (a) initial disclosures. Plaintiff's counsel affirms that it served the District with Plaintiff's interrogatories and requests for production around October 22, 2020, and the District provided the three letters around November 24, 2020. (Docket No. 67 at p. 9.) It appears the District timely provided these letters in response to Plaintiff's request for production.[1] In any event, Plaintiff provides no explanation for how the allegedly untimely disclosure of these letters impacted the timing of her suit. Simcuski, 377 N.E.2d at 713.

Plaintiff also appears to argue that she relied on the District's bad-faith participation in discovery as if the claims were not time barred. She implies that the District was under a duty to inform her of her premature filing to allow her to preserve her claim. But "[a] wrongdoer is not legally obliged to make a public confession, or to alert people who may have claims against it, to get the benefit of a statute of limitations." Zumpano, 849 N.E.2d at 930. Similarly, this Court finds that an alleged wrongdoer is not legally obliged to alert its opponent of filing errors to benefit from filing deadlines.

Finally, Plaintiff argues that the District's statement that it did not think it would be

---

[1] Both parties refer to an insurance coverage action that the District was prosecuting against its insurer at the same time as the instant matter was ongoing. The District asserts that it informed Plaintiff of this action, in which the three letters were at issue, on August 8, 2019, and that Plaintiff had access to New York's electronic filing system and could have found them earlier. (Declaration of Patrick Hines, Docket No. 72, at p. 2.)

10

filing a motion for summary judgment, made on July 22, 2021—when Plaintiff still had one month to recommence her action—was deceptive. The District denies ever making this statement. (See Docket No. 72 at p. 8.) But even assuming that counsel's unsworn statements about how he might proceed were binding, this argument fails because Plaintiff does not explain how she relied on this statement, or how she would have acted differently absent such a statement.

Not finding any fraud, deception, misrepresentation, or duty to disclose, this Court declines to apply the drastic remedy of equitable estoppel to bar the District's statute of limitations defense.

### b. Counsel's Errors

Plaintiff's counsel asserts that when he commenced this action he had extensive personal and professional obligations, including helping his mother during a lengthy illness that resulted in her death. (Docket No. 66 at pp. 4-6.)  Plaintiff's counsel also asserts that he mistakenly believed that Plaintiff's claim was governed not by C.P.L.R. 214-g but by C.P.L.R. 208 (b), which extends the infancy toll for an under-eighteen victim of sexual abuse from 18 to 55.

Plaintiff's counsel asks this Court to consider his family obligations and excuse his error regarding the applicable section of the CVA. Plaintiff cites no law supporting this request, and the caselaw regarding early-filed claims is sparse.

At the outset, this Court notes that "it would be a mischievous practice to disregard state statutes of limitation whenever federal courts think that the result of adopting them may be inequitable." Guar. Tr. Co. of N.Y. v. York, 326 U.S. 99, 111, 65 S. Ct. 1464, 1471, 89 L. Ed. 2079 (1945) (internal citation omitted). As the Supreme Court has stated,

"[s]ince a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State." Id.

Even if this Court could provide the equitable relief Plaintiff requests, it does not find a basis to do so. The doctrine of equitable tolling is instructive in this regard, although it is not directly applicable for two reasons. First, the doctrine permits *late* actions for equitable reasons, taking into account important "social interests in certainty, accuracy, and repose." Rein v. McCarthy, 803 F. App'x 477, 480 (2d Cir. 2020). These interests are less at stake in the matter of an early filing. Second, equitable tolling is a doctrine applied by federal courts excusing parties' failure to comply with *federal* procedural rules and does not implicate state procedural rules, such as the CVA provision at issue here. See Holland v. Fla., 560 U.S. 631, 650, 130 S. Ct. 2549, 2563, 177 L. Ed. 2d 130 (2010) (Ginsburg, J., dissenting) (contrasting "a case about federalism," that asked whether *federal* courts may excuse a petitioner's failure to comply with a *state court's* procedural rules, with equitable tolling, that asks whether federal courts may excuse a petitioner's failure to comply with *federal* timing rules, "an inquiry that does not implicate a state court's interpretation of state law.") (citing Lawrence v. Fla., 549 U.S. 327, 341, 127 S. Ct. 1079, 1084, 166 L. Ed. 2d 924 (2007)). Nevertheless, the principles of equitable tolling provide some guidance in determining whether Plaintiff merits relief.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Rein, 803 F. App'x at 480. The Second

Circuit has held that "normal errors by attorneys" typically do not constitute the extraordinary circumstances warranting equitable tolling. Rein, 803 F. App'x at 480 (citing Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003)). And "miscalculating a deadline is the sort of garden variety attorney error that cannot on its own rise to the level of extraordinary circumstances...." Dillon v. Conway, 642 F.3d 358, 364 (2d Cir. 2011).

Here, Plaintiff's counsel asserts that he believed that C.P.L.R. 208 (b), which extended the infancy toll, not 214-g, which revived previously time-barred claims, applied to Plaintiff's claim. His claim is, essentially, that he misread the statute. This Court finds that Plaintiff's counsel's error in determining when revived actions under the CVA could be commenced is "the sort of garden variety attorney error that cannot on its own rise to the level of extraordinary circumstances." Id. Equitable relief based on the assertion of this "garden variety" attorney error is simply not warranted.

### c. Prejudice to the District

Plaintiff argues that the District would not be prejudiced in any way by this Court denying it its statute of limitations defense. She argues that the District's conduct during discovery shows that it was committed to defending this action and suggests that this conduct shows that the District intended to waive its statute of limitations defense. Because of the District's vigorous discovery practice, Plaintiff argues that the District would not be prejudiced by this Court denying its motion and being made to continue defending this action.

In an ordinary situation, the danger posed by disregarding statutes of limitations is to defendants' interest in finality and repose. "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation

13

and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424, 426–30, 85 S. Ct. 1050, 1053–56, 13 L. Ed. 2d 941 (1965) (quoting Order of R.R. Telegraphers v. Ry. Express Agency, Inc., 321 U.S. 342, 348-49, 64 S. Ct. 582, 586, 88 L. Ed. 788 (1944)).

These are not the potential harms the District faces here, where Plaintiff's action was commenced not too late, but too early. But this does not mean that the District would not be prejudiced were this Court to reject its defense and compel it to continue to defend a case that was not commenced in accordance with the statutory provisions. The District timely raised a statute of limitations defense in its answer. It participated in discovery without any discernable bad faith. Plaintiff, for her part, demands $25 million in damages. To deny the District a valid defense under these circumstances would surely be prejudicial.

### d. Interests of justice

Plaintiff argues that she will suffer grave injustice if this Court grants the District's motion based on the "technical issue" of the statute of limitations. (Docket No. 66 at p. 16.)  She argues that the legislature intended to allow formerly time-barred victims of sex offenses to hold their abusers accountable for their injuries and that permitting her to proceed would therefore comport with the legislature's intent.

It is true that the CVA was intended to provide extraordinary relief, based on the legislature's assessment that survivors of sexual abuse had previously been required to bring their suits "long before they reported or came to terms with their abuse." S. H., 2022 WL 1414607, at *3. And this Court recognizes that enforcing the dates set forth by the legislature will, in effect, terminate Plaintiff's claims, because the revival window is now

closed.

At the same time, this Court must consider that the New York legislature clearly spelled out the period in which claims could be brought. The legislature established that claims could not be commenced until six months after the enactment of the CVA. As discussed above, "[s]pecial laws," such as C.P.L.R. 214–g, "that revive causes of action are 'extreme example[s] of legislative power' and are narrowly construed" S. H., 2022 WL 1414607, at *4.

Absent any indication of legislative intent for the extraordinary relief provided by C.P.L.R. 214-g to extend earlier or later than the dates set in the statute, this Court cannot permit Plaintiff's prematurely-commenced claim to proceed.

### 3. The District's other arguments

The District also moves for summary judgment on some of Plaintiff's state-law claims. The District argues that Plaintiff's claim for endangering the welfare of a child and for violating New York education law are not cognizable; that her negligent infliction of emotional distress claim is duplicative of her negligence claim, and that no facts in the record support her negligent hiring claim. Because this Court finds that summary judgment is warranted based on the District's statute-of-limitations defense, it declines to address the parties' arguments regarding those particular causes of action.

**B.      Plaintiff's motion for discovery sanctions and for a hearing**

Plaintiff moves to sanction the District under Rule 37 (b)(2)(A) for failing to obey Judge Scott's initial scheduling order dated July 28, 2019. (Docket No. 68-1 at p. 1.) Plaintiff argues that the District's failure to disclose the three disciplinary letters regarding Timothy Retchless as part of its Rule 26 (a) initial disclosures warrants sanctions. As a

sanction, Plaintiff asks this Court to dismiss the District's motion for summary judgment. The District argues that it was under no obligation to produce the letters under Rule 26 (a), and that it timely produced them in response to Plaintiff's request for production of documents. (Docket 72-11 at pp. 8-10.)  The parties conducted depositions beginning in May 2021, several months after Plaintiff received the letters from the District. (Id.)

Plaintiff's motion for sanctions, although it refers to Rule 37 (b), actually falls under Rule 37 (c), in that she asserts that the District failed to provide information required by Rule 26 (a). Pursuant to Rule 37 (c), "if a party fails to provide information … as required by Rule 26(a) …, the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P 37 (c)(1). "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard, may order payment of the reasonable expenses, including attorney's fees, caused by the failure; may inform the jury of the party's failure; and may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Id. Such other sanctions include dismissing pleadings and rendering a default judgment against the noncompliant party. Fed. R. Civ. P. 37 (b)(2)(A)(vi).

Federal Rule of Civil Procedure 26 (a) states, in pertinent part, "a party must, without awaiting a discovery request, provide to the other parties … a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26 (a)(1)(A)(ii).  Amendments to this rule in 2000 narrowed

"[t]he scope of the disclosure obligation … to cover *only information that the disclosing party may use to support its position*." Fed. R. Civ. P. 26, Advisory Committee's Note (2000) (emphasis added). In other words, "[a] party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use." Id.

Here, the District argues that it was not required to provide the disciplinary letters as part of its Rule 26 (a) initial disclosures because it had no intention of using them in support of its position. Plaintiff argues, somewhat confusingly, that the District could not *know* that it would not use the letters, and posits a hypothetical in which the District might later seek to use the letters. (Docket No. 76-1 at p. 3.) Regardless of this speculation, the rule refers to a party's intention to use documents as the test for whether documents must be disclosed under Rule 26 (a). The District asserts that it did not intend to use the letters.

Plaintiff also argues that the District inappropriately delayed turning over the letters. Plaintiff states, "it was only after Plaintiff's counsel served the District with their Request for production of documents and first set of interrogatories that the Districts (sic) counsel provided the three disciplinary letters." (Docket No. 68-1, ¶ 13.) But this does not appear to be improper discovery behavior.

This Court finds that sanctions are not warranted because the District was not required to turn over the letters with its initial disclosures nor did it fail to turn them over after receiving Plaintiff's request for production. Having carefully considered the parties' submissions on this issue, this Court does not find any misconduct during discovery that would warrant sanctioning the District, particularly with so harsh a sanction as dismissing its motion for summary judgment.

Because this Court has resolved Plaintiff's motion for sanctions based on the parties' submissions, it will deny Plaintiff's motion for a hearing on this issue as moot. (Docket No. 76.)

### III. CONCLUSION

Because Plaintiff commenced this action before the date the New York legislature authorized for the commencement of suits under the CVA, and because this Court finds no equitable reasons to relieve Plaintiff from the dates set by the New York legislature, the District's motion for summary judgment will be granted. Because summary judgment is warranted on this basis, this Court will not consider the District's other arguments directed at Plaintiff's claims. Because the District did not engage in discovery misconduct warranting sanctions, Plaintiff's motion for sanctions will be denied, and her motion for a hearing on that motion will be denied as moot.

### IV. ORDERS

IT HEREBY IS ORDERED, that the District's Motion for Summary Judgment (Docket No. 39) is GRANTED.

FURTHER, that Plaintiff's Motion for Sanctions (Docket No. 68) is DENIED.

FURTHER, that Plaintiff's Motion for a Hearing (Docket No. 76) is DENIED AS MOOT.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated:    June 13, 2022
         Buffalo, New York

                                                <u>s/William M. Skretny</u>
                                                WILLIAM M. SKRETNY
                                                United States District Judge